UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBRA I. SIXBERRY,

                    Plaintiff,

v.                                                     7:12-CV-1231
                                                          (GTS)
CAROLYN W. COLVIN, Comm'r of Soc. Sec.,

                    Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

CONBOY, McKAY, BACMAN & KENDALL, LLP       LAWRENCE D. HASSELER, ESQ.
  Counsel for Plaintiff
307 State Street
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMIN.                        REBECCA H. ESTELLE, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Debra I. Sixberry ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 13.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on December 13, 1958. Plaintiff has completed a high school level of education and is able to communicate in English. She has most recently worked as a certified

nurse assistant. Generally, Plaintiff's alleged disability consists of lumbar spine disorder post two surgical repairs, hypertension, history of frozen left shoulder disorder, history of left ankle ulceration, and depression. Her alleged disability onset date is December 30, 2004, and her date last insured is June 30, 2010.

B.  **Procedural History**

On July 29, 2008, Plaintiff applied for Social Security Disability Insurance. Plaintiff's application was initially granted in part and denied in part, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 14, 2010, Plaintiff appeared before the ALJ, Robert E. Gale. (T. 34-58.) On December 23, 2010, the ALJ issued a written decision finding Plaintiff disabled under the Social Security Act for a closed period from July 2006 through December 31, 2008 (T. 12-25.) On July 19, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

C.  **The ALJ's Decision**

Generally, in his decision, the ALJ made the following ten findings of fact and conclusions of law. (T. 15-24.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 16.) Second, the ALJ found that, at all relevant times, Plaintiff's lumbar spine disorder was a severe impairment. (T. 16.) Third, the ALJ found that from December 30, 2004 through December 31, 2008, Plaintiff's severe impairment did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id.*) Fourth, the ALJ found that, from December 30, 2004 through December 31, 2008, Plaintiff's residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) was significantly diminished by exertional limitations. Specifically, the

ALJ found that Plaintiff "could occasionally lift, carry, push or pull 10 pounds; could frequently lift, carry, push or pull less than 10 pounds; and could sit, stand or walk, in combination, substantially less than a full workday on a sustained basis secondary to frequent exacerbations of back pain and other symptoms." (T. 16-17.) Fifth, the ALJ found that, from December 30, 2004 through December 31, 2008, Plaintiff was unable to perform her past relevant work. (T. 17.) Sixth, the ALJ found that, from December 30, 2004 through December 31, 2008, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (T. 17-18.)

Seventh, the ALJ found that medical improvement occurred as of January 1, 2009, which is the date Plaintiff's disability ended. (T. 18-20.) Specifically, the ALJ found that "[t]he objective medical evidence and [Plaintiff's] course of medical treatment establish that the severity of her lumbar spine disorder significantly decreased in terms of signs, symptoms and laboratory findings by January 1, 2009, such that [Plaintiff] was capable of returning to significant work activity as of that date." (T. 18.) Eighth, the ALJ found that, beginning on January 1, 2009, Plaintiff has not had an impairment or group of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 20.) The ALJ considered listing 1.04. (*Id.*) Ninth, the ALJ found that, beginning on January 1, 2009, Plaintiff has had the residual functional capacity ("RFC") to perform the exertional demands of light work as defined in 20 C.F.R. § 404.1567(b) and has additional nonexertional limitations. (T. 20-23.) Specifically, the ALJ found that Plaintiff "can occasionally lift, carry, push or pull 20 pounds; can frequently lift, carry, push or pull 10 pounds; can stand or walk, in combination, for about 6 hours in an 8-hour workday with normal breaks; can sit for about 6 hours in an 8-hour workday with normal breaks; and can occasionally balance, stoop, kneel, crouch, crawl or climb." (*Id.*) Tenth,

and finally, the ALJ determined that, beginning on January 1, 2009, Plaintiff "has been able to perform a significant number of jobs in the national economy." (T. 24.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ failed to lend proper weight to the opinion of her treating physician, Dr. Dhawan. (Dkt. No. 10 at 5-8 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ failed to properly calculate her RFC for the following reasons: (1) the ALJ's determination that Plaintiff was able to perform the full range of light work on January 1, 2009 when she was totally disabled the day before is untenable; (2) the ALJ failed to acknowledge the medical evidence of her limitations after January 1, 2009; and (3) the ALJ was required to accept the opinion of Plaintiff's treating physician, Dr. Dhawan. (*Id.* at 8-10.) Third, Plaintiff argues that the ALJ failed to properly assess her subjective allegations of pain and disabling symptoms. (*Id.* at 10-12.) Fourth, and finally, Plaintiff argues that the ALJ's determination at step five of the sequential analysis is unsupported by substantial evidence for the following reasons: (1) the ALJ improperly relied on the Grids when Plaintiff's RFC does not match the criteria of a medical-vocation rule exactly; (2) the ALJ was required to obtain expert vocational testimony due to Plaintiff's significant nonexertional impairments; and (3) even if Plaintiff could perform the full range of sedentary work, the Grids require a finding of "disabled." (*Id.* at 12-13.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues that the ALJ properly determined that Plaintiff could perform light work beginning on January 1, 2009. (Dkt. No. 13 at 5-11 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly found

4

that work existed in significant numbers in the national economy that Plaintiff could perform beginning on January 1, 2009, given her RFC for light work and other vocational factors. (*Id.* at 11-12.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

> **B.** **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past

6

work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Weighed the Opinion of Plaintiff's Treating Physician

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 5-8 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Here, Plaintiff argues that the ALJ failed to assign controlling weight to the opinion of her spine surgeon, Dr. Raman Dhawan, M.D., because Dr. Dhawan's opinion is supported by

7

diagnostic evidence and is not inconsistent with other substantial evidence. Defendant argues that substantial evidence, including the State agency doctor's opinion, contrarily indicates that Plaintiff can perform light work.

Here, the record includes treatment notes from Plaintiff's treating spine surgeon, Dr. Raman Dhawan, M.D., for the period October 10, 2007 through November 20, 2009 as well as a medical source statement from Dr. Dhawan dated April 16, 2010. (T. 325-352.) Dr. Dhawan's treatment notes reflect that on October 30, 2007, Plaintiff underwent a transforaminal lumbar interbody fusion with instrumentation on her lumbosacral spine at L4-L5. (T. 342-343.) Almost immediately after surgery, Dr. Dhawan noted that Plaintiff was feeling well, reported no leg pain, and was able to walk very well without a cane. (T. 342.) In addition, Dr. Dhawan continued to report that x-rays of Plaintiff's lumbosacral spine show that Plaintiff is healing well and that she has good fusion at L4-L5 and her instrumentation is in good position. (T. 326-342.) However, Dr. Dhawan also noted that Plaintiff continued to report some minimal back pain off and on and that Plaintiff continued to remain disabled. (T. 327-342.) In addition, Dr. Dhawan noted that Plaintiff was undergoing physical therapy and was taking Tylenol for pain. (T. 336-338.) At Plaintiff's visit on November 20, 2008, Dr. Dhawan again noted that Plaintiff is doing well, remains temporarily totally disabled and that he will see her back again in six weeks. (T. 332.) At her next visit on January 9, 2009, Dr. Dhawan again noted the same status. (T. 330-331.) It was not until February 27, 2009 that Dr. Dhawan changed Plaintiff's status to temporary "50%" disability. (T. 329.) On November 20, 2009, Dr. Dhawan noted that Plaintiff is 50% disabled and has reached maximum improvement. (T. 326.) In the medical source statement completed by Dr. Dhawan on April 16, 2010, he opined that Plaintiff can occasionally lift and carry up to twenty pounds but can never lift or carry over twenty pounds; can sit, stand and walk

for four hours at one time without interruption and for four hours total in an eight-hour workday; and can never crawl and can occasionally climb, balance, stoop, kneel and crouch. (T. 346-351.)

First, after listing Dr. Dhawan's findings regarding Plaintiff's functional limitations, the ALJ noted that, while he "does not reject [Dr. Dhawan's] opinion in total, the additional exertional and nonexertional limitations are not supported by the record and have not been adopted in this case." (T. 22.) The ALJ next explained that Dr. Dhawan's opinion that Plaintiff is "50 percent disabled" or "partially totally disabled" is an issue reserved to the Commissioner and is given little weight but that "the specific functional limitations related to [Plaintiff's] ability to perform work-related tasks have been considered" in determining Plaintiff's RFC. (T.23.) Finally, the ALJ explained that "Dr. Dhawan's April 26, 2010[1] opinion cannot be accorded controlling weight because it is not well-supported by the objective medical evidence and is inconsistent with other substantial evidence, including [Plaintiff's] use of medication and course of treatment." (T. 23.) Instead, the ALJ explained, he assigned greater weight to the opinion of the State agency medical consultant because that opinion is more consistent with the record in its entirety. (T. 23.)

In fact, the "opinion" of the non-examining State agency medical consultant is the only objective medical evidence relied on by the ALJ in support of his conclusion that substantial evidence contradicts Dr. Dhawan's opinion. The State agency medical consultant provided a one-paragraph conclusory statement that Plaintiff is capable of performing light work beginning January 1, 2009, after apparently reviewing Dr. Dhawan's notes, at least one of which is not in

---

[1] The record reflects that Dr. Dhawan signed the referenced medical source statement on April 16, 2010, not April 26, 2010. (T. 351.)

the record before this Court.² (T. 303.) Accordingly, the ALJ erred in failing to assign Dr. Dhawan's opinion controlling weight on the basis that it is contrary to the State agency medical consultant's opinion.

To be sure, the Dr. Dhawan's notes reflect that Plaintiff had a good result from her surgery, was doing well, and had limited pain. However, Dr. Dhawan also provided the opinion that Plaintiff would remain partially disabled going forward in spite of the good result from her surgery. While "the ultimate determination of disability is reserved to the Commissioner," that does not detract from the weight owed to the opinion of a treating physician. *Djordjevic v. Colvin*, No. 11-CV-3287, 2013 WL 3990764, at *3 (E.D.N.Y. Apr. 5, 2013); 20 C.F.R. §§ 404.1527(d), 416.927(d). Dr. Dhawan's opinion regarding Plaintiff's functional limitations is not necessarily inconsistent with Plaintiff having a good result from surgery. Therefore, it was error for the ALJ to fail to assign controlling weight on the basis that Dr. Dhawan's opinion is inconsistent with his own treatment notes and the objective medical evidence of record.

Accordingly, remand is necessary so that the ALJ may sufficiently explain the weight assigned to the opinion of Plaintiff's treating physician, Dr. Dhawan.

---

² The State agency medical consultant's opinion was provided in response to a "request for medical advice" from a disability analyst. The analyst, who apparently was having difficulty reaching Dr. Dhawan to seek "further information" regarding his January 9, 2009 clinic note, suggested that there might be a better outcome if the medical consultant were to make the contact. In response, the State agency medical consultant, M. Eggleston, provided the following statement: "Please note that Dr. Dha[w]an states that [Plaintiff] has successful ou[tcom]e from interbody fusion. This was stated on 12-23-2008. Surgery date was on 10-30-2007. In 12/06 [Plaintiff underwent an] endoscopic L4-5 dis[c]ectomy and [] continued with pain and improvement has taken place after fusion. There was spondylolisthesis present at L4-5 leve[l]. So ther[e] has been a closed period [un]til[] 12-08. Then light work can be assigned." (T. 303.)

### B. Whether the ALJ Properly Calculated Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 8-10 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations ... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, No. 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545(a)(3)-(4)). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. *See* 20 C.F.R. §§ 404.1545(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairments may affect his ability to work. *See* 20 C.F.R. § 404.1513(c)(d).

First, Plaintiff argues that the ALJ's RFC determination was erroneous because he failed to explain how Plaintiff went from totally disabled on December 31, 2008 to being capable of performing light work on January 1, 2009. Defendant counters that the law allows a determination that a claimant may medically improve from one day to the next, citing *Decker v.*

11

*Astrue*, No. 09-CV-908, 2011 WL 7630363, at *1 (N.D.N.Y. Nov. 28, 2011) for support. To be sure, the Court in *Decker* found that substantial evidence supported the ALJ's decision that the Plaintiff was disabled from March 27, 2003 through October 14, 2004 but that, beginning October 15, 2004, Plaintiff experienced medical improvement and his disability ended. *See Decker*, 2011 WL 7630363, at *3, 9. However, there, unlike here, one of plaintiff's treating physicians completed a report recording findings supporting the ALJ's determination that, at least as of the date of the report, the plaintiff was no longer disabled. An ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984). Here, the ALJ failed to sufficiently explain the basis for January 1, 2009 as the date of medical improvement. To be sure, the ALJ relies almost exclusively on the opinion of the State agency medical consultant, who cites in part a December 23, 2008 treatment note of Plaintiff's treating physician that cannot be located in the record. (T. 303.) Therefore, remand is necessary on this basis alone so that the ALJ may sufficiently explain his decision that medical improvement occurred beginning on January 1, 2009.

Plaintiff next argues that the ALJ's RFC determination was erroneous because he failed to acknowledge evidence of Plaintiff's extensive limitations. Defendant counters that much of the evidence Plaintiff cites in support of her argument predates January 1, 2009. However, Plaintiff does identify record evidence of Plaintiff's limitations after January 1, 2009, including a medical source statement from a physical therapist, Randy Lehman.

Mr. Lehman provided a medical source statement in June 2010 after having completed a functional capacity evaluation of Plaintiff. (T. 518-523, 530-537.) Mr. Lehman opines that Plaintiff can never lift or carry in excess of ten pounds but can frequently lift up to ten pounds;

12

can sit for a total of 25 minutes, stand for 35 minutes and walk for twelve minutes without interruption; and can sit a total of five hours, stand a total of two hours and walk a total of one hour in an eight-hour workday. (T. 518-523.) However, in his functional capacity evaluation, Mr. Lehman noted that the results of his assessment *may not* be an accurate indication of Plaintiff's physical abilities because she did not always exhibit the expected biomechanical and physiologic changes during the evaluation. (T. 23, 530-537 [emphasis added].) The ALJ gave Mr. Lehman's opinion no weight because he only examined Plaintiff on one occasion and because he noted that the results may not be accurate.

The ALJ also noted that the opinion of a physical therapist is not entitled to controlling weight because a physical therapist is not an accepted medical source under Social Security Regulations. Nonetheless, a physical therapist is an "other source" whose opinion the ALJ may consider regarding the severity of a claimant's impairment and how it affects the claimant's ability to work. *See Luffman v. Comm'r of Soc. Sec.*, No. 12-CV-317, 2013 WL 1386639, at *7 (N.D.N.Y. Mar. 14, 2013) (citing 20 C.F.R. § 404.1513(a)). Opinions from medical sources that are not considered acceptable medical sources, such as physical therapists are "important and should be evaluated on key issues such as impairment severity and functional effects." *Anderson v. Astrue*, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009). The Regulations provide that the Secretary will consider "evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *See* 20 C.F.R. § 404.1513(e). In weighing the opinions of "other sources" the ALJ must use the same factors for the evaluation of the opinions from "acceptable medical sources" enumerated in 20 C.F.R. § 404.1527(c). *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010). Here, the ALJ erred in failing to properly determine the weight assigned to Mr.

13

Lehman's opinion under the regulations and in failing to sufficiently explain the weight assigned.

It is also worth noting that the ALJ does not discuss, much less assign any weight to, the opinion of orthopedic consultative examiner, Dr. Sandra Boehlert, M.D. Dr. Boehlert examined Plaintiff on November 25, 2008 and opined, after considering Plaintiff's back pain and left shoulder pain, that Plaintiff "has mild to moderate limitation to pushing or pulling in the standing position or repetitive bending, twisting, and squatting [and that Plaintiff] has a mild limitation to heavy repetitive lifting, pushing, or pulling with the left arm or repetitive reaching overhead with the left arm." (T. 290-295.) When discussing Plaintiff's medical improvement after January 1, 2009, the ALJ decided that Plaintiff's frozen left shoulder is not considered severe because it, alone or in combination with her other impairments, would have no more than a minimal effect on Plaintiff's ability to perform work. (T. 18.) To be sure, at the hearing Plaintiff testified that if she'd never hurt her back and her only impairment was her left shoulder pain, she could have returned to her prior work. (T. 46.) Plaintiff's attorney then stated that Plaintiff does not claim that her frozen shoulder is a severe condition. (*Id*.) However, when determining the Plaintiff's RFC, the ALJ is required to consider all of Plaintiff's medically determinable impairments including those that are not severe. *See Tudor v. Comm'r of Soc. Sec.*, No. 12-CV-2795, 2013 WL 4500754, at *11 (E.D.N.Y. Aug. 21, 2013) (citing 20 C.F.R. § 404.1545(a)(2)).

For these reasons, remand is necessary so that the ALJ may consider all relevant evidence and sufficiently explain his RFC determination after first properly determining the weight to assign to the opinion of Plaintiff's treating physician.

C.    **Whether the ALJ Properly Assessed Plaintiff's Subjective Allegations**

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 10-12 [Pl.'s Mem.

of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.*

Here, the ALJ considered Plaintiff's testimony and other reports of pain, functional limitations and daily activities and found that her "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible beginning on January 1, 2009, to the extent they are inconsistent with [the ALJ's RFC] assessment." (T. 21.)

First, as indicated in Point IV.B. of this Decision and Order, remand is necessary so that the ALJ may revisit his RFC assessment. Moreover, "[i]t is erroneous for an ALJ to find a [plaintiff's] statements not fully credible because those statements are inconsistent with the ALJ's own RFC finding." *Ubiles v. Astrue*, No. 11–CV–6340, 2012 WL 2572772, at * 12 (W.D.N.Y. July 2, 2012).[3] Instead, the ALJ must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *See* SSR 96-7p.

Accordingly, remand is necessary so that the ALJ may properly assess Plaintiff's credibility in accordance with the regulations and after reexamination of the relevant evidence in the record.

---

[3] *See also Nelson v. Astrue*, No. 5:09-CV-00909, 2010 WL 3522304, at *6 (N.D.N.Y. Aug. 12, 2010), *adopted*, 2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010); *Kennedy v. Astrue*, No. 09-CV-0670, 2010 WL 2771904, at *5 (N.D.N.Y. June 25, 2010), *adopted*, 2010 WL 2771895 (N.D.N.Y. July 12, 2010); *Smollins v. Astrue*, No. 11-CV-424, 2011 WL 3857123, at *10-11 (E.D.N.Y. Sept. 1, 2011); *Mantovani v. Astrue*, No. 09-CV-3957, 2011 WL 1304148, at *5 (E.D.N.Y. Mar. 31, 2011).

### D. Whether the ALJ's Determination at Step Five of the Sequential Analysis is Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the negative. The Court would only add the following analysis.

Here, at step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform. Instead, the ALJ decided that there are jobs in the national economy that Plaintiff can perform, relying solely on the Medical-Vocational guidelines.

At step five of the sequential analysis, the Commissioner can usually meet his burden to establish that, if a plaintiff is unable to perform her past work, there is other work which she could perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *See Baldwin v. Astrue*, No. 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers from significant non-exertional limitations that significantly limit her employment opportunities, exclusive reliance on the Grids is inappropriate. *See Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986)). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606).
However, "the mere existence of a non-exertional impairment does not automatically preclude reliance on the guidelines." *Zabala v. Astrue*, 595 F.3d 402, 410–411 (2d Cir.2010) (citing *Bapp*, 802 F.2d at 603).

Because remand in necessary so that the ALJ may, among other things, revisit the weight assigned to the opinion of Dr. Dhawan, remand is also necessary so that the ALJ may revisit his decision at step five of the sequential analysis after having reevaluated his RFC analysis. Should the ALJ determine that Plaintiff has "significant non-exertional limitations that significantly limit her employment opportunities," consultation with a vocational expert may be appropriate. *See Baldwin*, 2009 WL 4931363, at *27.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: September 20, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge